## THE BALTIMORE.[1]

## THE LACKAWANNA.

### HOBOKEN LAND & IMP. CO. v. THE BALTIMORE.

### PENNSYLVANIA R. CO. v. THE LACKAWANNA.

(*District Court, E. D. New York.* December 9, 1887.)

COLLISION — BETWEEN STEAMERS — DISOBEDIENCE OF RULE 19, NAVIGATION LAWS.

The ferry-boat Baltimore started from her New York slip, bound for Jersey City, and took a course of S. W by S. She sheered one point further south, to pass under the stern of the ferry-boat Delaware, and this sheer brought her on a course crossing that of the ferry boat Lackawanna, which was coming up the river, and with the latter on her port hand. The Lackawanna ported, to pass under the stern of the Baltimore, but the latter again starboarded her wheel, and the two ferry-boats came in collision. *Held,* that the situation of the boats was such as to make rule 19 operative, which required the Baltimore to hold her course. Her second change of course, therefore, was in disobedience to this rule, and was the fault that caused the collision.

In Admiralty.
*Abbett & Fuller*, for the Lackawanna.
*Biddle & Ward*, for the Baltimore.

BENEDICT, J. An examination of these cases, aided by the briefs of the advocates, lately submitted, has confirmed me in the impression formed when the witnesses were examined last summer. As I view the cases, the cause of the disastrous collision out of which they arose was the failure of the pilot of the Baltimore to obey the nineteenth rule of the navigation laws. The Baltimore, on starting from New York, took the direct course from her slip; this was S. W. by S. When on this course, the ferry-boat Delaware, bound up the river ahead of the Lackawanna, blew to the Baltimore, and the pilot of the Baltimore says, "I hauled her down about S. S. W. first, to clear him." This brought the course of

---

[1] Affirmed on appeal, see *post*, 614.

Reported by Edward G. Benedict, Esq., of the New York bar.

the Baltimore one point further to the southward than before, but left her upon a course crossing the course of the Lackawanna, then coming up below, and having the Baltimore on her starboard side. The proximity of the two vessels at that time was such as to make rule 19 operative, and the rule made it the duty of the Baltimore to hold her course, and the duty of the Lackawanna to avoid her.' The Lackawanna, in compliance with the rule, ported, and commenced to sheer to the eastward. This she did before the Baltimore straightened her course down the river. After the Lackawanna commenced her sheer to eastward, the pilot of the Baltimore, as he himself says, blew two whistles, and straightened her course down the river. This second change of the Baltimore's course was made in disobedience of rule 19, and it was the fault that caused the collision. It was no fault in the Lackawanna to sheer to eastward when she did. She had the right so to sheer and allow the Baltimore to cross ahead of her, for the course of the Lackawanna was then crossing the course of the Baltimore, and the Baltimore was on the Lackawanna's starboard side. It was no fault in the Lackawanna to hold that sheer when once taken, for she had the right to suppose that the Baltimore, when she saw the Lackawanna swing to east in pursuance of the rule, would of course pass down on the outside, as could then have been done without difficulty. This view of the case renders it unnecessary to consider the other points discussed by the advocates. In accordance with this view the libel of the Pennsylvania Railroad Company against the Lackawanna must be dismissed, with costs, and the Hoboken Land & Improvement Company must recover of the ferry-boat Baltimore the damages resulting from the collision in the pleadings mentioned.